JUDGE FORREST

12 CV 5163

Daniel J. Kaiser [DK-9387]
KAISER SAURBORN & MAIR, P.C.
111 Broadway, Suite 1805
New York, New York 10006
(212) 338-9100

Attorneys for plaintiff



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHRISTIAN NIELSEN,

                Plaintiff,

    -against-

AECOM TECHNOLOGY CORP, and
AECOM MIDDLE EAST, LTD.,

                Defendants.
------------------------------------------------------------x

**COMPLAINT**

(Jury Trial Demanded)

      Plaintiff, Christian Nielsen, by his attorneys, Kaiser Saurborn & Mair, P.C., as and for his complaint against defendants, alleges as follows:

### PARTIES AND VENUE

    1.    Plaintiff, Christian Nielsen, is a former employee of defendants.

    2.    Defendant, AECOM Technology Corp ["AECOM"], is a United States publically traded company.

    3.    Defendant, AECOM Middle East, Ltd. ["AME" or collectively with AECOM "defendants"] is a wholly-owned U.S. operating subsidiary of AECOM.

    4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the claims asserted herein arise under 18 U.S.C. § 1514A.

    5.    Venue is properly laid in this District pursuant to 28 U.S.C. § 1391 because it is a

District in which the defendants engages in business.

6. This whistleblower action, which arises pursuant to Title VIII of the Sarbanes-Oxley Act of 2002 (18 U.S.C. § 1514A), is brought to recover damages sustained by plaintiff when defendants retaliated against him because of his complaints about, and objection to, the submission of false safety reports which was accomplished through the use of telephones and emails and which defrauded shareholders.

### FACTS GIVING RISE TO THE CAUSES OF ACTION

*Mr. Nielsen's AECOM Employment*

7. Mr. Nielson was hired by defendants into the position of Fire Engineering Manager.

8. His job responsibilities included, among other tasks, insuring that all submitted engineering plans satisfied applicable fire safety standards.

9. At all times, he performed his critically important work functions with integrity, diligence, and excellence.

10. In short, Mr. Nielsen took his responsibilities very seriously and did not tolerate deviation from legal requirements and safe engineering practices.

11. His summary termination was the direct consequence of Mr. Nielsen's repeated objections to the submission of engineering plans that had not been properly reviewed in accordance with fire safety standards and yet were falsely represented as having met fire safety legal requirements as well as defendants' internal safety standards.

12. Defendants, absent Mr. Nielsen's intervention, were prepared to knowingly submit false fire safety designs.

13. This fraudulent business practice had the potential of exposing the company to extreme financial risk in the form of lost contracts, degradation of its international reputation and brand identity, and thus constituted potential shareholder fraud.

14. By its fraudulent conduct, defendants placed its future financial prospects in peril unbeknownst to its shareholders.

*Mr. Nielsen's Objections to Defendants'*
*Fraudulent Business Practices*

15. Mr. Nielsen supervised Naung Hann, employed by defendants in the position of Fire Protection Engineer.

16. Mr. Hann was a problematic and difficult employee who did not diligently perform his work tasks and did not follow direction.

17. The most troubling aspect of Mr. Hann's work performance was his insistence on permitting defendants' fire safety designs to be designated with AECOM's stamp of approval without any proper review of the designs.

18. On February 22, 2011, Mr. Hann permitted more than twenty fire safety designs to be marked with AECOM's stamp of approval even though none had been reviewed.

19. It was Mr. Hann's responsibility to insure proper review of the designs.

20. On March 1, 2011, Mr. Nielsen provided to Mr. Hann a written warning regarding the incident. Mr. Nielsen also warned Mr. Hann in connection with other performance lapses, but it was the fraudulent stamping of the fire safety designs that was for Mr. Nielsen of paramount concern.

21. On March 20, 2011, Mr. Nielsen advised AECOM management of Mr. Hann's

performance issues, including the fire safety design approval issue.

22. On March 24, 2011, Mr. Nielsen met with the Director of AECOM's Dubai office, Andrew Bannister, to discuss Mr. Hann. Mr. Bannister agreed that Mr. Nielsen's concerns were valid and that a disciplinary meeting should be convened.

23. On March 28, 2011, Mr. Nielsen met with Andrew Shofield, Vice-President of the Buildings Business Line for the Middle East, and he supported Mr. Nielsen's concerns about Mr. Hann's conduct.

24. Despite Mr. Nielsen's elevation of the issue concerning Mr. Hann's fraudulent conduct to high level AECOM management, remarkably on June 7, 2011, Mr. Hann again permitted fire safety drawings to be stamped without proper review.

25. Particularly concerning, he permitted stamping for approval a fire safety design for a project for which he had no continued involvement.

26. On June 12, 2011, Mr. Nielsen advised Steve Royston, the Dubai office's Buildings Business Unit Manager, of Mr. Hann's continued illicit practice and requested a time to discuss. Mr. Royston did not follow up with Mr. Nielsen.

*Mr. Nielsen was Terminated in Retaliation for his Objections to the Fraudulent Business Practices*

27. During the latter part of June, a series of meetings were held that Mr. Nielsen attended to discuss Mr. Hann. Defendants, however, made no decisions concerning how to proceed.

28. Since no one at defendants was properly addressing the fire safety design issue, Mr. Nielsen informed Mr. Bannister, Donna Watson, and Anthony McCarter that unless the issue

4

was definitively resolved, he could no longer continue to work at AECOM.

29. Mr. Nielsen was not prepared to violate the law and risk his professional reputation.

30. Instead, on June 23, 2011, Mr. Nielsen was called into a meeting by Mr. Bannister and advised that his employment was being terminated.

31. He was further advised that the employment of Mr. Hann, who had inadequate fire engineering qualifications and demonstrated a repeated willingness to fraudulently approve fire safety designs, would continue.

32. The only explanation provided to Mr. Nielsen was that his department was being shut down.

33. The explanation made no sense.

34. Mr. Nielsen's work tasks were necessary and would need to be performed by some AECOM employee.

35. Mr. Bannister's rationale for Mr. Nielsen's firing was an obvious pretext.

36. Rather, his discharge was part of a continuing effort to coverup the false approval of fire safety designs.

37. On June 26, 2011, Mr. Nielsen emailed David Barwell, Chief Executive for the Middle East, that he had been unjustifiably dismissed.

38. At a subsequent time, Mr. Barwell emailed Mr. Nielsen and advised him that he would investigate the matter.

39. Mr. Nielsen, however, was provided no evidence that Mr. Barwell's office took the issues seriously or was substantively investigating the matter.

40. On June 27, 2011, Mr. Nielsen received an email from Gehan El Fetoury, Human Resources Senior Advisor, stating that his employment was terminated. The reason provided now changed.

41. Defendants claimed Mr. Nielsen was being discharged because he admitted that he was not "suitable for the job."

42. No mention was made of closing the department. Of course, Mr. Nielsen did not admit to not being suitable for his position although he did express his unambiguous refusal to continue to engage in illegal and dangerous activity involving the false approval of fire safety designs.

*Mr. Nielsen Appealed his Dismissal to AECOM's*
*Global Compliance Office Located in New York*

43. On July 7, 2011, Mr. Nielsen contacted Susan Frank, Vice-President and Assistant General Counsel for AECOM's Global Compliance, requesting an independent investigation into his dismissal. Ms. Frank is located in the United States.

44. Ms. Frank responded the same day advising him that retaliatory dismissals are not tolerated and that Jennifer Gorman, member of AECOM's Ethics and Compliance office, would be responsible for the investigation.

45. On July 12, 2011, Mr. Nielsen provided to Ms. Gorman, whose office is located in Arlington, Virginia, a comprehensive report detailing the events culminating in his discharge, including his objections to the fraudulent approval of the fire safety designs.

46. Ms. Gorman assured Mr. Nielsen that the matter would be independently and objectively investigated.

40. On June 27, 2011, Mr. Nielsen received an email from Gehan El Fetoury, Human Resources Senior Advisor, stating that his employment was terminated. The reason provided now changed.

41. Defendants claimed Mr. Nielsen was being discharged because he admitted that he was not "suitable for the job."

42. No mention was made of closing the department. Of course, Mr. Nielsen did not admit to not being suitable for his position although he did express his unambiguous refusal to continue to engage in illegal and dangerous activity involving the false approval of fire safety designs.

*Mr. Nielsen Appealed his Dismissal to AECOM's*
*Global Compliance Office Located in New York*

43. On July 7, 2011, Mr. Nielsen contacted Susan Frank, Vice-President and Assistant General Counsel for AECOM's Global Compliance, requesting an independent investigation into his dismissal. Ms. Frank is located in the United States.

44. Ms. Frank responded the same day advising him that retaliatory dismissals are not tolerated and that Jennifer Gorman, member of AECOM's Ethics and Compliance office, would be responsible for the investigation.

45. On July 12, 2011, Mr. Nielsen provided to Ms. Gorman, whose office is located in Arlington, Virginia, a comprehensive report detailing the events culminating in his discharge, including his objections to the fraudulent approval of the fire safety designs.

46. Ms. Gorman assured Mr. Nielsen that the matter would be independently and objectively investigated.

47. On August 26, 2011, Mr. Nielsen received an email from Ms. Gorman stating that AECOM's investigation was complete.

48. The investigation concluded that no wrongdoing had occurred and Mr. Nielsen's termination was justified.

49. On August 29, 2011, and again on August 30, Mr. Nielsen requested that Ms. Gorman send to him a copy of the investigation report.

50. On August 31, 2011, Ms. Gorman responded by stating that the investigation report was confidential.

## CAUSE OF ACTION

(18 U.S.C. § 1514A)

51. Pursuant to Fed. R. Civ. P. 10(c), plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "50" as if repeated and incorporated herein.

52. Plaintiff reasonably believed that defendants were committing fraud upon its shareholders and would likely continue violating the United States mail and wire fraud statutes by using telephone lines and emails in furtherance of the fraud.

53. Defendants terminated plaintiff's employment, and affirmed his termination after an internal compliance investigation, because of his complaints about, and opposition to, its fraudulent business practices.

54. By reason thereof, defendants have violated 18 U.S.C. § 1514A.

55. Defendants' unlawful termination of plaintiff's employment has caused him to suffer substantial lost earnings as well as substantial damage to his reputation that will diminish his future earnings and earnings capacity.

56.     Plaintiff has suffered damages in an amount to be determined at trial.

**WHEREFORE**, plaintiff hereby demands judgment against defendants as follows:

(i)     Damages in an amount to be determined at trial;

(ii)    Awarding plaintiff the costs and disbursements of this action;

(iii)   Awarding plaintiff interest on the foregoing amounts;

(iv)    Pursuant to 18 U.S.C. § 1514A(c)(2)(C), awarding plaintiff his reasonable attorneys fees in this action and the prior proceeding before the Department of Labor; and

(v)     For such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a trial by jury.

Dated: New York, New York
       July 2, 2012

                                KAISER SAURBORN & MAIR, P.C.
                                Attorneys for plaintiff

                        By:     _____
                                Daniel J. Kaiser [DK-9387]
                                111 Broadway, Suite 1805
                                New York, New York 10006
                                (212) 338-9100